This is our first case of the afternoon. Pete Folt of the State of Illinois v. Nathan Cobbs for the appellant, Ms. Anderson, for the appellee, Mr. Sardinis. Is that the way you'd like it pronounced? You may proceed. Well, we didn't get it wrong this morning, did we? No. Good. Well, I wanted to double check. My name is Katie Forge. My name is Katie Anderson. And on behalf of the State Appellate Center, I represent Ms. Nichols. Ms. Forge, she releases your past condition and grants you a new trial because this case had numerous evidentiary issues that tonight can be your trial. Now, these guys are young, still young. I'm older. That doesn't amplify. That records. So lift your voice. I've heard everything you've said so far. Today, I plan to focus on the issues related to the jail phone call. However, I am also happy to answer questions about or otherwise address the issues relating to the jail bell and jury deliberations. I would also like to reflect I have no time for rebuttals. All of the statements that were attributed to Melissa White on the jail house phone call were hearsay. The State argues that they are not. You can see the statements attributed to Melissa White were necessary to place Cobb's statements in context. But the actual use of these statements went far beyond mere context. The jury was never told that they should only consider the statements on the jail phone that were attributed to Melissa White for the limited purpose of jury fact-finding calls. So a reverberance of what the state's intent was, all of the statements that were attributed to White were used for the jury to matter assertive. The trial court did give a limiting instruction during proven jury instructions, but the jury was never told that that limiting instruction applying to these statements that were attributed to Melissa White. In P.W. Jura, the First District stated that when the jury is not instructed that it can consider hearsay statements only for the limited purpose, or a ruling court will presume that the jury considered the statements for the truth of the matter assertive. What was the truth of the matter assertive in that phone call that would be attributed to Miss White? On appeal, we are contesting two categories of statements. First, we are contesting these statements where she promised to testify on his behalf and speak to his lawyer. And we're also contesting these statements where she identified the man on the call as me. Both of these categories of statements were prejudicial to Mr. Cobb. How could that, in assertion that I'm going to speak to your lawyer, why is that prejudicial? It doesn't sound prejudicial at all to me. It's just a statement. On its own, it's not prejudicial. However, the woman repeatedly stated that she would not only speak to his lawyer, but also testify on his behalf. And in the moment... We don't know if that's... we don't care if that's true. We just care that... or the fact finder need not care whether that's true. The fact finder would just... she said. Illinois law recognizes that when someone is... Illinois law recognizes that promising the jury that they will hear certain testimony and then not delivering on that promise, particularly when that testimony or evidence could have been exculpatory as to the defendant, is prejudicial. So basically, the woman said that she was going to testify. The jury heard that. There was no limiting instruction. So the jury heard her say on the jail phone call, I'll testify on your behalf, I'll testify on your behalf. And then the woman never showed up to testify. So this prejudices Mr. Cogsman. The jury is going to hold this against him. They're going to wonder why this woman did not show up in court to actually testify. And it's particularly prejudicial because under the state's theory of case, there's only three people present for this defense. There's Mr. Davis who testified, Mr. Cogs, and Ms. White. So this is someone that the jury obviously wants to hear from. And they're going to wonder why she doesn't testify. So the state solved that problem by introducing the jail house phone call, attributing statements on it to her, and then arguing that she didn't testify because any testimony that she would have offered would have been perjury. But we don't know why she didn't testify. As the first district acknowledged in the field, if a witness doesn't testify, we simply don't know whether their absence was due to any deficient representation or merely a failure to cooperate or appear or some other unforeseen or unexpected event. So here we simply don't know why she didn't testify, but the state is arguing that she didn't testify because he was attempting to suborn perjury or something of that nature. Now, if the woman on the jail phone call had testified, she would have been subjected to questioning and prosecution and would have been qualified to be able to press her statement for veracity. But here, because she did not testify, all we're left with is assumptions. Well, wouldn't the jury be curious that she didn't testify because she was the only eyewitness? I mean, other than defendant and alleged victim. So all the things that you're talking about, why the jury might think, wow, this is different, this is odd, when she would have said they would have been taking that anyway, wouldn't they? They would have. However, that prejudice is amplified by a couple of things. First of all, on this phone call, she repeatedly promises that she's going to talk to her lawyer and testify, and she doesn't live up to that promise. Another thing about this jailhouse phone call is that the woman identifies the man on the phone call as Nate. With these particular statements where the woman identifies the male on the phone call as Nate, that is very significant because the jailhouse phone call is only relevant to the extent that the jury believes that Mr. Cobbs is one of the parties to the phone call. So the identity of the man on the phone call is crucial to the state's case. Here, it's true that Detective Sumption did identify the man on the phone call as Mr. Cobbs. However, we don't know if the jury accepted that identification on its own. And when the woman refers to the man as Nate, this unfairly bolsters Sumption's identification by referring to the man as Nate. And that corroboration is key to the jury accepting this piece of evidence. And the woman's identification of the man as Nate was clearly a misdemeanor. The trial court specifically stated that it was admitting those statements where she identifies the man as Nate because it's thought that the jury was entitled to hear that the statements were not being made by someone named Kamali. Was there an objection? The defense counsel did object to the admission of the jailhouse phone call in general. The defense counsel objected to the, and one of the many grounds on which he objected, was that all of the woman's statements were hearsay. The defense counsel also specifically stated that he felt that there was going to be a foundational issue with the state being able to prove the identity of the woman. And when Sumption identifies the woman as Nate, did the defendant specifically testify that the statement purportedly made by White that she was talking to Nate, or did the defendant just simply cite a page of a transcript where that happened to be mentioned without explicitly saying this is something that needs to be withheld from the jury? The defense counsel did not argue that that specific portion should be specifically withheld from the jury. However, there was substantial litigation regarding the entire jailhouse phone call during the motion of limine. And the defense counsel specifically objected to the admission of the woman's statements on the grounds that they were hearsay. This was also then raised in the motion for a new trial as well. So it's our position that the identification of the man as Nate was clearly admitted for a hearsay purpose, and that's clearly in violation of Illinois law. Because the statutory law requires that if a party makes an identification and that identification is admitted, the party making the identification needs to actually testify. Here, the woman on the phone call did not testify. So you have clearly a hearsay statement that the trial court admitted was clearly admitted for a hearsay purpose. The jury was never informed that they should not consider it for that purpose. And this statement went directly to the relevance of the jail phone call in its entirety. And we know that the jail phone call was a very key piece of the state's evidence of trial. Because during jury deliberations, the jury specifically asked to listen to the jail phone call recording again. After the jail phone call recording was played for the jury in the courtroom, they returned to the jury room to deliberate. They reached a verdict only five minutes later. Therefore, Dan tells us that listening to the jail phone call clearly had an impact on the jury's verdict. In People v. Davis, the first district noted that where the jury returned a guilty verdict only 20 minutes after receiving the trial court's response to a question, the short length of deliberations after receiving the response invites to inference that the answer had an impact on the verdict. And that was 20 minutes. Here, it was only five, which is a much shorter period of time. Because the issues relating to the jail phone call were preserved, the verdict shifts to the state to prove that the admission of this evidence was harmless error. And in light of what I just mentioned, the jury reaching a verdict so quickly after listening to the jail phone call again, the state simply can't leave now for it. Because this evidence clearly played a role in the jury's deliberation. Also, another thing is, another important point is harmless error. The key point of this trial was really how Mr. Cobbs came to be in possession of Mr. Davis' property. Detective Sumption testified that when Cobbs was arrested, they found a bunch of Mr. Davis' properties with cobs. Cobbs had also pled guilty to a charge relating to possessing Mr. Davis' debit card. So the key issue with this trial was really how Mr. Cobbs came to be in possession of all of this property. And the only evidence that we have as to how he came to be in possession of this property is the testimony of Mr. Davis. And Mr. Davis did have some credibility issues as a witness. He was on DUI probation at the time of both the offense and the trial. And part of his probation conditions was that he was supposed to refrain from using drugs or alcohol. On the night of the offense, he went to a party at his cousin Mariah Laws' house. Mariah Laws is currently incarcerated on an unfeathering offense. And she also told Detective Sumption that everyone at her house was drinking. And Detective Sumption also testified that when he initially interviewed Jeremy Davis, that Davis did say that he was drinking at the party. So therefore, we do have some credibility issues relating to Mr. Davis. His actions after the offense also indicate that he was trying to delay contacting the police, likely to sober up. He testified that after he left Mr. Cobbs, he ran for about a mile or two. And during this flight, he ran past a fire station that he did not stop at for help. He also ran past the first gas station before he stopped at a gas station. When he got to the gas station, he didn't call the police. He called his mom. His mom came and picked him up and drove him home. And he didn't contact the police until after he had been called. So there was quite a delay between the actual offense occurring and Mr. Davis contacting the police. Mr. Anderson, may I ask a question here at this point? At trial, what did the defendant's lawyer argue to the jury in terms of how it was that he came to be in possession? And not just the debit card, but Davis' cell phone, his ID cards, the backpack itself was Davis', right? And as well, the backpack contained this look-alike pistol. How was that explained? That is correct. I do not recall off the top of my head how the defense counsel argued that to the jury. In closing, I apologize. However, the important thing is, is the state fears a burden of proof and proving beyond a reasonable doubt how Mr. Cobbs came into possession of those items. Well, isn't that incredibly damning evidence? The backpack, and I'm not sure if it's exact location, but the police are following up the lead that the debit card had been used at the Baymont Inn. They go to the Baymont Inn. They find an arrest defendant. The defendant has Davis' debit card on him. The backpack is in close proximity in some position. They get a search warrant, and they find all of this stuff which corroborates the victim's testimony. And apparently, there's no explanation at trials to why the defendant had all of these items beyond the debit card of Davis, plus the look-alike pistols in there. That is certainly very strong circumstantial evidence that Mr. Cobbs was in possession of those items. But again, the key here is how he came to be in possession of those items and whether he used force to obtain them. Let's say, for example, it's possible that Mr. Cobbs, maybe he just stole those items from the car. Maybe they kicked Mr. Davis out of the car. And that's why I was asking, what did the defendant's lawyer argue at trial in regards to those items? It is my recollection that he focused primarily on the credibility of Mr. Davis. However, if Mr. Davis simply left his items in the car, or maybe Mr. Davis left some items at Mariah Laws and Mr. Cobbs took them from Mariah Laws' house, we know that everyone was together earlier that night. But the simple fact that Mr. Cobbs ended up with possession of Mr. Davis' property doesn't support the inference that it was taken by force, and it certainly doesn't prove the force element of aggravated robbery all on its own. And as to possession of the airsoft pistol, it is uncontested that Mr. Cobbs and Mr. Davis had spent some time together the evening of July 4th. So it's possible that Mr. Cobbs had the airsoft pistol for unrelated reasons. Mr. Davis was aware of it, and he included that in his story to the police. You know, it's possible that Mr. Davis got out of the car at the gas station voluntarily, and Mr. Cobbs drove off and left him, and Mr. Davis was very angry. You know, there's any numerous things that could have gone on. Wasn't part of the evidence also that your client originally admitted that the back of these items Justice Harris has described belonged to the defendant, and then later in a subsequent interview denied that he owned that bag? Mr. Cobbs did change his version of events related to— And the jury heard all that? Correct. Okay. That is correct. Mr. Cobbs did change his version of events. And that is another reason why, you know, this jailhouse phone call reporting is so important. We have Mr. Davis with credibility issues. We have Mr. Cross who was given different versions of events. That makes any version of events provided by Melissa White that much more important to the jury's determination, because she was also present. So if you have, you know, Mr. Cobbs on one side and Mr. Davis on the other side, you know, then you've got Miss White in the middle as possibly, you know, the tiebreaker. And she did not testify, and all these other court statements were attributed to her. And quite frankly, we don't know whether she was actually the woman on the tape or not. We don't know why she didn't testify. But attributing these statements to her gave that jailhouse phone call a lot of credibility. And it also gave a great way to say his argument that he was attempting to perform perjury, which, again, we simply don't know. If the court doesn't have any additional questions. If she had not been identified, would the phone call be admissible? Assuming that, you know, you've already got the police officer identifying the defendant. In my opinion, none of the woman's statements on the phone call should have been admitted. They were not necessary to place the man's statements in context. The state even, you know, admitted in their brief that, quote, they argued that, quote, the defendant's attempts to suborn perjury are clear regardless of the identity of whom the defendant was speaking to. And this implies that if the state is submitting these statements to prove that he's attempting to suborn perjury, they can achieve that solely through the statements that are attributed to cops on that jailhouse phone call. They can redact her statements completely and then avoid any evidentiary issues relating to the woman regardless of whether she's identified. Redact her statements or redact her identity? Or both. I would argue that her statement should be redacted. Her identity also should have been redacted because the only way that they proved that was through detective assumptions identification. And that identification also was not in compliance with any white law because detective assumption identified her without, well, or complying with the safeguards identified in Peeble v. Thompson. So there's a whole other host of issues related to identifying the woman as white. The state has argued that Peeble v. Thompson does not apply to this situation. But actually, it does. Thompson itself explicitly states that it applies to lay opinion identification testimony from a law enforcement officer. And that is precisely what detective assumptions identification of Melissa White was. It doesn't matter whether the identification was based on a sound or video recording or whether the person being identified is the defendant or someone else. Thompson still applies. For example, in Peeble v. Garrett, this court extended Thompson to lay opinion identification testimony identifying an object in a surveillance video, not the defendant. So assumptions identification of White falls under this gambit of Thompson. And the trial court didn't follow these Thompson safeguards with respect to assumptions identification of the woman. The trial court was well aware of how to apply these safeguards because it used them when detective assumption identified Mr. Copps, this man, in the video from Casey's and also in the jailhouse recording. So the trial court's failure to follow these same procedures with respect to the identification of Ms. White was an abuse of discretion. We'll hear from you on rebuttal. The time has expired. Thank you. That's an interesting point, the part about Ms. White's identity and Ms. White's responses. I mean, the gist of what the state was trying to show was these are things the defendant said without regard to who he's talking to. Your Honor, it could have been somebody else at the party. It could have been just another, and whether she says anything or not, he's trying to get somebody to support his version of the story, which isn't even clear because we don't know if it's a poker game or a dice game or he's not clear on what his version of the story is. Sure, Your Honor, and I think that's a point, I think that's an important point, not for the defendant, but for the state in terms of the harmlessness of what the defendant's claiming. But I don't submit it. I think that there are two separate questions that this point implicates. One is, is it important that it's Melissa White on the other end of the phone call? And is it important to admit the responses of whoever was on the other end of the phone call? As to the second, which I think is the easier one, I think it is obvious that if one were to have a conversation with someone else about a plan to suborn perjury by convincing an attorney to call you as a witness, claiming that there was a reasonable explanation, an exploratory one, for why you had a stolen credit card and stolen materials, then I think it's absolutely relevant to hear who the defendant is talking to in order to understand what the purpose of the conversation was. It's kind of puzzling that defendant would posit that we could just play a defendant talking on a monologue with no responses and that the jury would understand what's going on without hearing who he's talking to in response. I think the second point regarding Ms. White's identification is confusing to say the least because there are the two arguments that, or the three arguments, I would say, that the defendant advances for why her statement should have been redacted are puzzling to say the least. The first being that this hearsay, I think, as I just said, is important for the purposes of the Paul's understanding of the jury for her to hear what she's saying on the call because if not, it would just be a long recitation of the defendant saying things without a response and that wouldn't be helpful to the jury's understanding of what he was trying to say and it's incredibly helpful if they have the responses to understand that. The second one regarding the idea that she was somehow offering exploratory testimony is, I don't know if I would say that in the way that perjury is not exploratory. If everyone's agreeing on the phone that we're going to lie to the court and to the jury to make up an explanation, then that is not promising exploratory testimony. I think that also the defendant failed to mention that the entire case that relies on has to do with ineffective assistance to counsel from a defense counsel positing that they will prove that there's exploratory information and that they're not bringing it and that that, therefore, is prejudicial and restrictive. That's not the case here because the defendant didn't make any promises that it was exploratory. The defense counsel, I'm sorry, didn't make that argument when in opening or after the trial and, in fact, trying to deflect as much attention as possible, probably for strategic reasons away from the fact that the defendant decided repeatedly to try to support perjury throughout the pretrial process to get off of this offense where he robbed someone. And lastly, for the statements of identification, the fact remains that when the two responses, which were something like a question and then a response that I'm dying, aren't meant as statements of identification. They're simply using his name in the context of the conversation. So, for example, Your Honor, if I said something like, Justice Connect, would you like a cup of coffee? The purpose of me using Justice Connect is not to identify you to someone else in order to prove that you are Justice Connect. It's simply to get your attention or to underline that I'm speaking to you versus other people, and none of those purposes are used to prove the truth of the matter asserted that the person on the call is, in fact, Nate. In fact, the only thing that it does show is that she thought she was speaking to Nate. She could have possibly been speaking to the person who said their name in the phone call that wasn't the defendant. But that's also not provable because the information that was provided by the state when we admitted the call was that the phone call was made at the jail at the time the defendant was seen on video specifically speaking over the phone call. And the jail officer who retrieved the call testified that she had heard the defendant's voice. And the defendant didn't even contest below that it was him on the phone call at all because he couldn't because there was overwhelming evidence that it was him on the call because we had video of him making the call, and we had someone saying that it was his voice on the call. So the fact remains that all of this kind of seems irrelevant to the underlying reasons that the statements were admitted and that all of this was helpful to the jury understanding that the defendant was engaging in a course of conduct to try to put false testimony in front of the court to escape criminal liability for holding a gun to someone's head and stealing their stuff and having no explanation for it other than repeatedly lying to police and trying to lie to the attorney and lying to the state that this was somehow something innocent, that he had this car. Without an explanation, as the justices have pointed out, for how he had the rest of the stuff and why his stuff was in there, maybe Luke Davis' stuff, and how any of that was explained. And to answer your question, Justice Harris, about what the specific argument was is that there wasn't an argument made about it because there was no explanation. So the defense attorney kind of said, well, the state needs to prove the unreasonable doubt and we don't have specific evidence because we have this guy who tried to possibly get out of a DUI violation and therefore that proves that he's been lying about all this testimony, which, again, is an inference that I don't think you can certainly draw because even if you accept that he was trying to avoid liability for violating his DUI probation, I don't think any of that comes in to explain any of the rest of the information. So with regards to the phone call and Melissa White's particular elements, all of these arguments I think are errorless. And even if they were relevant, they were completely and totally harmless because there's overwhelming evidence that Thompson was the one that committed the crime. And if the court has no further questions about the call, I'll address some of the Thomson stuff that the defendant brought up before he sat down, which is that Thompson shouldn't apply to identifications and voices for several reasons. First, defendants attempted to extend Thompson to cover non-defendant witnesses. And the reason that's important is because the defendant has a right under the Constitution to effectively cross-examine his accusers. And both Thompson and the Thompson lines of cases that draw from the federal case law all speak of a Hobson's choice that this kind of thing puts the defendant in when attempting to cross-examine an officer. Because if the defense attorney goes up and says something like, well, how do you know that it's the defendant in the video? And the police officer says, well, I've arrested your client six times for various other offenses, including robbery, then defense has no recourse for being able to not have that information included because he's over the door. And those common law procedures are specifically built to avoid that and maintain that ability. But here we have a witness who's not the defendant, who has no right under the Constitution for effective cross-examination because rights are not indicated in this particular circumstance. And you can see that based on the third part, which is that federal courts don't employ this when it comes to sound recordings. The state cited six different federal circuits for which we draw the Thompson safeguards. And in those cases, none of the courts have ever employed this when it comes to identifying a Hobson as sound recording. The vast majority of these cases in the federal courts involve informants who are wiretapping phone lines and only gain experience with the defendant's voice based on hearing them in the wiretapping context. And then their laborious opinions are admitted in federal court for the same purpose. So since we draw Thompson and there were rules of evidence are all drawn from the federal procedure, it seems like it was that no court that defendant can at least point to has ever ascended this to the sound recording context in the history of federal evidence law or the state of Illinois' evidence law. So I think that it would be an overzealous attempt without argument as to why the underlying common law procedure should be employed. And I think it's important also to separate that the state doesn't contest that the Thompson factors provide a useful tool for explaining when a laborious opinion testimony is helpful to the jury. The state doesn't contest that. But it kind of seems to confuse that with a reply because the two questions are, one, are the factors helpful for trial courts to evaluate the usefulness of that evidence? And the second is whether or not those safeguards must be employed every time there's a sound recording. And the state doesn't disagree as to the first, but definitely disagrees that the safeguards should be employed in the voice recordings. So if the court has no further questions on the Thompson related issue, I just want to quickly address... Well, I guess if the court has no further questions, just the rest of us decided to discuss the rest of the brief, I think I'll sit down. Thank you. Thank you. Rebuttal. So the statement repeatedly referring to the woman's, to the sentence on the telephone call as perjury. But quite frankly, we don't know if that's the case. As this court pointed out, Mr. Krause is not clear on his version of events, and he gives numerous versions. And just because a statement of facts or a theory of what happened or statements on a recording are not consistent with the state's theory of the case, doesn't automatically make them perjury. The way we can determine if these statements would be perjury or not would be if we called this woman to the scene and asked her. But that didn't happen. So, therefore, seeing that these statements were not perjury, again, that is just a giant assumption. And that is part of why a million statements were so prejudicial to Mr. Krause. The receipt pointed out that the case law in Illinois regarding promising the jury that they'll hear evidence and then not delivering on that promise is all due to the ineffectiveness of counsel claims. And that is true. But that doesn't mean that that same principle regarding what is prejudicial doesn't apply. Because when you have a jury trial like we have here, it's going to make no difference to the jury who told them they were going to hear certain evidence. All the jury knows is they were told they were going to hear something, and then they didn't. And if they think that evidence that they didn't hear supports the defense's theory of the case or supports the defendant, they're going to hold that against the defendant. It makes no difference to the jury where the promise actually came from. Now, as to Thompson, the state argued that Thompson only applies to identifications of the defendant. And that just isn't true. Like I already mentioned, this court extended Thompson and people who hear it to identification of an object. Also, the state discussed constitutional rights of the defendant to conform to witnesses against him and other constitutional rights of the defendant. But Thompson is rooted in Illinois rules of evidence. It's not rooted in the constitutional rights of the primary accusers. And the state also discussed the federal case law cited in Thompson. But what we need to understand is Thompson discussed federal case law dealing with law enforcement identification testimony because it was trying to examine how other courts have dealt with that to determine best practices in Illinois. So that's basically what Thompson did. It determined in Illinois, under the rules of evidence, what is required to admit lay opinion identification testimony and what is required when that lay opinion identification testimony comes from a law enforcement officer. So what they did in all these other federal circuits, quite frankly, it doesn't matter because in Illinois, we follow Thompson. And there is nothing in Thompson that limits its application to identifications that are based on videos. I would argue that if you have an identification based on voice, the Thompson safeguards are even more important because you have less on which to base that identification. You don't have any visual cues. You only have the audio. So I think it stands to logic that Thompson not only applies the cases where identification is based on audio, but the safeguards become even more important. And those safeguards simply were not utilized in this case. The jury was never instructed that it did not have to take the self-protective assumptions identification of Melissa White as the truth. And as I already argued, identifying that woman as Melissa White was extremely prejudicial to cops because this is someone that the jury wanted to hear from. And the state was able to say, hey, you've heard from her through presenting this jail phone call. You've heard from her in all she would have said was perjury. So the state kind of dealt with their failure to present her as a witness very neatly through that jail house phone call. Also, the state argued that the statements identifying the man as name were not statements of identification. But the trial court specifically stated that it was admitting no statements because they identified the man as name. Furthermore, these statements could serve no other purpose within the context of the phone call than to let the jury know that the woman was speaking to someone namely. There was simply no other purpose. These were kind of just free-floating statements that were completely lifted from their context. The rest of the pages that they appear on were completely redacted. And the statements, again, they served no other purpose and that was the sole reason of why they were admitted. So it's very disingenuous to argue that they're not statements of identification. Thank you for your time. And for these reasons and the reasons cited, I'm afraid that there is a clear question as to how to be ranked in the trial. Thank you, counsel. We'll take this matter under advice.